## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| Joy Marie Melançon Maher | Civil Action No. 09-02096 |
| versus | Judge Tucker L. Melançon |
| Mutual of Omaha Insurance Company | Magistrate Judge Hanna |

## MEMORANDUM RULING

Before the Court are cross motions for summary judgment filed by plaintiff, Joy Marie Melancon Maher [Rec. Doc 16] and defendant, Mutual of Omaha Insurance Company [Rec. Doc. 13] and the oppositions thereto [Rec. Doc. 16, 18]. For the following reasons, the motion for summary judgment filed by plaintiff will be denied and the motion for summary judgment filed by defendant will be granted.

### *I. Background*

This is an action arising from the denial of benefits under an Employment Retirement Income Security Act plan, 29 U.S.C. § 1001 et seq. The following represents the undisputed facts. *R. 13, 16.* On August 10, 2006, Daniel Dennis Maher ("decedent") died as a result of Legionnaire's Disease. Decedent was employed by Ashland, Inc. ("Ashland") as a chemical salesman. As an employee of Ashland, decedent was covered under three Accidental Death and Dismemberment insurance policies regulated under the Employment Retirement Income Security Act of 1974 ("ERISA") and issued by Mutual of Omaha Insurance Company ("the Plan"). Mutual served as the Plan administrator and was vested with the discretion to review claims, make decisions regarding eligibility, and interpret the Plan.

Decedent's widow, plaintiff Joy Marie Melancon Maher, the named beneficiary of the Plan, filed a claim seeking insurance benefits under the three insurance policies constituting the Plan: (1) T5MP-P-50257, a "24 Hour Accident Coverage" plan; (2) T66BA-P-50258, an "Accidental Death and Specific Loss Policy;" and, (3) T5MP-P-50259, an "Occupational and Accidental Death and Disbursement Plan" (collectively referred to as "Policies"). *R. 13, Exhs. A, B, C; R. 16-1, ¶ 6.* All three Policies provide coverage for "injuries," defining the term as "accidental bodily injuries" that result "independently of sickness and all other causes." All three Policies require furnishing "written proof of loss." *Id.*

Plaintiff asserts that she is entitled to benefits under the Plan, alleging decedent contracted Legionnaire's Disease after "being exposed to Legionella bacteria accidentally released into the air . . . while making sales calls at chemical plants and staying multiple nights in hotels in New Orleans, Louisiana." Plaintiff cites four other cases of Legionella exposure in Louisiana in August 2006, as reported by the Center for Disease Control and Prevention, as evidence of her assertion that Legionella bacteria was negligently and accidentally released in New Orleans while decedent was there on business. Plaintiff requested that Mutual conduct its own investigation into the matter, but Mutual declined to do so. She also sought details about the four other Legionella exposures in Louisiana, but was ultimately unable to obtain additional information.

Plaintiff submitted documentation, including decedent's death certificate, to Mutual. The death certificate listed the immediate cause of death as "Legionella

2.

Pneumonia, Acute Respiratory Distress Syndrome, and Septic Shock." By letter dated October 3, 2008, Mutual denied plaintiff's claim for benefits stating that "[b]ased on the medical documentation there is no evidence of an accidental bodily injury, independent of sickness and other causes, but rather that Daniel Maher's death was the result of a sickness or disease." Plaintiff appealed the denial of benefits multiple times, and her final appeal was denied by letter dated October 1, 2009. Plaintiff filed the instant lawsuit on December 10, 2009.[1]

## II. Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the

---

[1] Plaintiff initially filed suit on September 4, 2007, but that case, 07-1460, was dismissed for failure to exhaust administrative remedies.

non-moving party to show that there is a genuine issue for trial.[2] *Id.* at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.,* 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir. 1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier

---

[2] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

of fact could have found for the non-moving party. *Id.*

### III. Analysis

In her motion, plaintiff contends that the Plan Administrator abused its discretion, falling short of its fiduciary responsibilities by failing to investigate and arbitrarily denying benefits. In its cross-motion, defendant asserts that it did not abuse its discretion in denying benefits because plaintiff did not demonstrate decedent suffered an "injury" as defined by the policies and that, even if such "injury" could be demonstrated, plaintiff lacked sufficient proof to substantiate her claim. The Court will address these issues in turn.

As a threshold matter, the Court will address plaintiff's contention that the administrative record before the Court is incomplete because plaintiff has, as of yet, been unable to obtain data she seeks related to other Legionellosis infections in Louisiana in August 2006. Plaintiff further contends the record is incomplete because Mutual has refused to conduct its own investigation into the matter. Plaintiff's argument is unpersuasive. With respect to ERISA claims, the Court's review is limited to the factual evidence in the administrative record, considering only the facts known to the plan administrator at the time the benefits decision was made. *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999)(citing *Wildbur v. Arco Chem. Co.*, 974 F.2d 631, 639 (5th Cir. 1992)). Additionally, even when the insurer also acts as a plan administrator, "a conflicted administrator is not under a duty to 'reasonably investigate' a claim." *Gooden v. Provident Life & Accident Ins. Co.*, 250 F.3d 329, 333 (5th Cir. 2001) (quoting

*Vega v. Nat'l Life Ins. Servs.,* 188 F.3d 287, 298 (5th 1999)(en banc) *abrogated on other grounds*.  Thus, the fact that plaintiff encountered obstacles and was unable to access all of the documents she sought or the fact that Mutual did not further pursue this avenue of research as plaintiff requested does not impact the Court's analysis.

When reviewing an administrator's decision to deny benefits under an ERISA plan, a deferential standard of review is to be used when the ERISA plan grants the administrator the discretion to interpret the meaning of the plan. *Crowell v. Shell Oil Co.*, 541 F.3d 295, 310 (5th Cir. 2008).  Because the Plan in this case vests Mutual with such discretionary authority, Mutual's decision to deny benefits is subject to review by the Court under an abuse of discretion standard.

Applying an abuse of discretion review of an administrator's interpretation of the plan may consist  of a two-step process: first inquiring whether the plan administrator's decision was "legally correct," and, if it is not, secondly inquiring whether the administrator abused his discretion. *Id.* at 312. To determine if the administrator's decision is legally correct, the court considers: "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." *Crowell*, 541 F.3d at 310 (quoting *Threadgill v. Prudential Secs. Group*, 145 F.3d 286, 292-93 (5th Cir. 1998)). The factor most worth considering is "whether the administrator's interpretation is consistent with a fair reading of the plan." *Crowell* at 310 (quoting

*Gosselink v. AT&T, Inc.*, 272 F.3d 722, 727 (5th Cir. 2001)). If the court determines the "administrator's interpretation of the plan is legally correct, then the inquiry ends because no abuse of discretion could have occurred." *Spacek v. Mar. Ass'n*, 134 F.3d 283, 292 (5th Cir. 1998) *abrogated on other grounds*(citing *Wildbur,* 974 F.2d at 637).

If the court determines the administrator's interpretation is not legally correct, it proceeds to the second step and assesses whether the administrator abused his discretion, analyzing: "(1) the internal consistency of the plan under the administrator's interpretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith." *Gosselink*, 272 F.3d at 726 (quoting *Wildbur*, 974 F.2d at 638). At this point, if the administrator both administers and insures the Plan, as in this case, this conflict of interest is weighed as a "factor in determining whether there is an abuse of discretion." *Crowell*, 541 F.3d at 312 (quoting *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (2008)).[3]

Mutual maintains that in exercising its discretion as Plan administrator, it properly denied benefits because decedent suffered an illness rather than an injury, and consequently was not covered under the plain language of any of the three policies. When interpreting an ERISA plan, eligibility for benefits "is governed in

---

[3] The United States Supreme Court directly repudiated the application of any form of heightened standard of review to ERISA claims denials in which a conflict of interest is present, and therefore superceded the sliding-scale approach in *Vega,* 188 F.3d 287 (5th 1999). *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).

the first instance by the plain meaning of the plan language." *Threadgill*, 145 F.3d at 292. Additionally, the court "should not interpret a policy to leave specific provisions without meaning or effect." *S. Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 103 (5th Cir. 1993). Here, all three policies define "injuries" as "accidental bodily injuries" which result "independently of sickness." Because it is undisputed that decedent died of Legionnaire's Disease, a form of pneumonia, concluding that his death was not caused by an injury conforms to the plain and reasonable meaning of the Policies' language and represents a fair reading of the Plan.

Furthermore, viewing an illness as distinct from bodily injury is supported by jurisprudence. In *Riverwood Int'l Corp. v. Employers Ins. of Wausau*, 420 F.3d 378, 385 (5th Cir. 2005), plaintiffs argued that exposure to asbestos fibers should be construed as an accident and thus considered a "bodily injury by accident." The policy in *Riverwood* included distinct provisions for "bodily injury by accident" claims as separate from "bodily injury by disease" claims. In rejecting the plaintiffs' logic, the court reasoned that allowing an exposure to equate to an accident "would render the provision providing for 'bodily injury by disease' claims . . . superfluous." *Id.* at 384. In the instant case, there is no separate provision allowing the Insured to recover for injury by disease. However, because all three Policies state that only "accidental bodily injuries . . . which result independently of sickness" are covered, interpreting the Policies in a manner that

8.

views an exposure to Legionella bacteria as an accident would then render superfluous the provisions explicitly excluding sickness from coverage.

As the evidence in the administrative record is undisputed that decedent died as a result of Legionnaire's Disease, the Court finds the administrator's denial of benefits is legally correct. Because it is only when "the court determines that the administrator did not give the legally correct interpretation, must the court then determine whether the administrator's decision was an abuse of discretion," the inquiry ends here. *Tolson v. Avondale Indus.*, 141 F.3d 604, 608 (5th Cir. 1998).

Even assuming *arguendo*, however, that plaintiff's illness could somehow be construed as an injury, the plaintiff fails to tie the decedent's contraction of the disease to any specific date, location, or activity undertaken while in the course and scope of his employment with Ashland. Plaintiff maintains that a "statistical anomaly" exists because there were four cases of Legionellosis reported in Louisiana in August 2006 within nine days of each other. However, the locations of the bacterial contraction in these cases remain unknown and plaintiff's quest for such information has been unavailing. Thus, plaintiff lacks evidence to substantiate her claim that decedent's exposure to the Legionella bacteria was in any way an accidental injury linked to his occupation.

### IV. Conclusion

Considering the issue that is before the Court, whether the Plan administrator abused its discretion in denying benefits to plaintiff, the record reflects that the Plan administrator's determination does not violate the plain meaning of the

Policies' language. Thus, denying benefits was a legally correct interpretation of the Policies and did not amount to an abuse of discretion. Accordingly, plaintiff's motion for summary judgment will be denied and defendant's motion for summary judgment will be granted.